UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL MOGUEL, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2902 & consol. cases**<br>**Pertains to: 11-2902 & 12-32** |
| **RHEEM MANUFACTURING COMPANY** | **SECTION "C" (3)** |

### ORDER AND REASONS[1]

Before the Court are Rheem Manufacturing Company's ("Rheem") Motion in Limine to exclude the testimony and report of George A. Hero, Jr. ("Mr. Hero") and its Motion for Summary Judgment.[2] State Farm Fire and Casualty Company ("State Farm") filed opposition memorandums, which the Court assumes are adopted by Michael Moguel and Delmy Cruz (collectively, "complainants"). Rec. Docs. 119, 120. Having considered the record, the memoranda of counsel, and the applicable law, the Motion in Limine is DENIED and the Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART and for the following reasons.

### I. BACKGROUND

The complainants filed separate actions against Rheem and State Farm regarding a leak that occurred in their home. Rec. Doc. 1; Rec. Doc. 1 (Civ. Act. No. 11-2923). According to their

---

[1] Ashley Stockton, a second-year student at Tulane University Law School, assisted in the preparation of this Order and Reasons.
[2] It appears to the Court that by seeking the dismissal of claims brought by the complainants and State Farm, Rheem intended these motions to pertain to Civ. Act. No. 11-2902 as well as Civ. Act. No. 12-32. As this matter approaches trial, counsel should ensure that the captions are accurate.

complaints, the complainants were the owners of a home in Covington, Louisiana that was insured by State Farm. Rec. Doc. 1 at 2; Rec. Doc. 1 (Civ. Act. No. 11-2923) at 2-3. There were two hot water heaters manufactured by Rheem located in the complainants' third-floor attic. Rec. Doc. 1 at 2; Rec. Doc. 1 (Civ. Act. No. 11-2923) at 3. In November 2010, the complainants allege that they returned home from work to see that their home and personal property had been devastated after one of the heaters had leaked and ruptured, allowing water to flow throughout the house for 15 hours. Rec. Doc. 1 at 2; Rec. Doc. 1 (Civ. Act. No. 11-2923) at 3. They allege this caused extensive damage throughout the residence. Rec. Doc. 1 at 2; Rec. Doc. 1 (Civ. Act. No. 11-2923) at 3.

The complainants brought the action against Rheem as a result of the alleged damage, claiming that the hot water heater was unreasonably dangerous in its construction, composition, and/or design, that Rheem failed to warn of its defects, and/or that the heater did not conform to the express warranty of the manufacturer. Rec. Doc. 1 at 3. The complainants brought the separate action against State Farm to enforce State Farm's alleged breach of its obligations to the complainants under their homeowner's insurance contract. Rec. Doc. 1 (Civ. Act. No. 11-2923) at 4. State Farm subsequently filed a Petition for Damages against Rheem in the 22nd Judicial District Court of Louisiana (St. Tammany Parish), claiming that Rheem is liable to State Farm for the full extent of its damages. Rec. Doc. 1-1 (No. 12-32) at 6. That petition was removed to federal court and all three of these actions were consolidated. Rec. Doc. 1 (Civ. Act. No. 12-32).

The complainants and State Farm (collectively, "plaintiffs") retained Mr. Hero to inspect the water heater. Rec. Doc. 80-2. Mr. Hero's opinion is that the water heater had a defective glass lining that allowed accelerated corrosion of the tank that resulted in a catastrophic leak. Rec. Doc. 80-2 at 2. Rheem also hired two experts to inspect the water heater. Rec. Doc. 120-6; Rec. Doc.

120-7.  Rheem's experts thought that the leak was normal, not catastrophic, and did not agree with Mr. Hero that a defective glass lining was the cause of the leak.  Rec. Doc. 120-6 at 5; Rec. Doc. 120-7 at 5-6.  Both of Rheem's experts contend that the leak was caused by the complainants' failure to inspect and maintain the water heater in accordance with the manufacturer's instructions.  Rec. Doc. 120-6 at 5; Rec. Doc. 120-7 at 5.

Rheem filed a Motion for Summary Judgment as to all claims brought by the plaintiffs.  Rec. Doc. 80.  Rheem also filed a Motion in Limine to exclude the testimony and report of Mr. Hero as unreliable, alleging that his testimony does not satisfy the necessary requirements for admittance. Rec. Doc. 81.

## II. MOTION IN LIMINE

### A. Legal Standard for Admissibility of Expert Witnesses

Rule 702 of the Federal Rules of Evidence states that a witness may be qualified as an expert by "knowledge, skill, experience, training, or education."  FED. R. EVID. 702.  A witness who is qualified as an expert may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.  *Id*; *Rogers v. Crosby Tugs, Inc.*, No. 12-2453, 2013 WL 2152184, at *1 (E.D. La. May 16, 2013).  Unlike an ordinary Rule 701 witness, a Rule 702 expert witness is "permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592, 113 S. Ct. 2786, 2796, 125 L. Ed. 2d 469 (1993).

The trial court acts as a gatekeeper for admitting expert witnesses, and must ensure that the expert's testimony "both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171, 143 L.Ed.2d 238 (1999); *Daubert,* 509 U.S. at 597. The court may consider several factors in determining reliability, including (1) whether the theory or technique can be tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential rate of error and whether standards governing its operation exist; and (4) whether the theory or technique has been generally accepted in the scientific community. *Daubert,* 590 U.S. at 593-94.

Barring an exception by the Constitution, a statute, or a rule, all relevant evidence is admissible and there is a liberal standard for relevance. FED. R. EVID. 402; *Daubert,* 509 U.S. at 587. Though "expert testimony may be excluded if it is speculative or conjectural . . . or if it is based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' . . . other contentions that the assumptions are unfounded 'go to the weight, not the admissibility, of the testimony.'" *Bic Corp. Far E. Source Corp.*, 23 F. App'x 36, 38 (2d Cir. 2001) (quoting *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202, 208 (2d Cir. 1984); *Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1188 (2d Cir. 1992), *cert. denied*, 506 U.S. 826, 113 S. Ct. 82, 121 L.Ed.2d 46 (1992)); *see also United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996). There exist several traditional and appropriate means for attacking "shaky but admissible evidence," including "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert,* 509 U.S. at 596; *United States v. 14.38 Acres of Land*, 80 F.3d at 1077.

**B. Admissibility of Mr. Hero's Expert Testimony**

Rheem argues that Mr. Hero's opinion should be excluded pursuant to Rule 702. Rec. Doc. 81 at 1. Rheem contends that Mr. Hero's opinion is not "scientific knowledge," will not assist the trier of fact in understanding and disposing of the relevant issues, and does not satisfy the requirements of *Daubert*. Rec. Doc. 81-1 at 4. Rheem alleges that Mr. Hero has not done the work necessary to support his hypothesis. Rec. Doc. 81-1 at 7.

Specifically, Rheem alleges that Mr. Hero did not inspect the glass lining of the subject water heater and did not conduct any testing, demonstration, or analysis to confirm or refute his theory that a defect existed in the glass lining. Rec. Doc. 81-1 at 5. It contends that Mr. Hero assumes that a defect existed because a defect can occur as a general phenomenon, and argues that this is a conclusory opinion that has no bases in fact or science. Rec. Doc. 81-1 at 5. Rheem identifies Mr. Hero's theory as a "logical fallacy" and a "speculative supposition" unconnected to any facts or circumstances of the case. Rec. Doc. 81-1 at 5-6.

In its opposition memorandum, State Farm alleges that Mr. Hero *did* inspect the remaining glass lining of the tank to the extent that he could, and points to his deposition testimony to support this contention. Rec. Doc. 119 at 11. It additionally provides a lengthy list of the data and facts Mr. Hero gathered and considered prior to forming his opinion. Rec. Doc. 119 at 7. State Farm argues that Mr. Hero's opinion was formed based on his experience and expertise, as well as on the specific data and facts analyzed. Rec. Doc. 119 at 8. It maintains that he has extensive experience in this field, that his testimony is grounded in science, that his theory is the product of reliable principles, and that he applied his theory to the facts of the specific case. Rec. Doc. 119 at 9.

The Court considers whether Mr. Hero's testimony "rests on a reliable foundation." *Kumho,* 526 U.S. at 141; *Daubert,* 509 U.S. at 597. Expert testimony is reliable if it is "supported by appropriate validation – *i.e.*, 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. The factors from *Daubert* may be considered in making this determination, and they "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150.

Mr. Hero's opinion on the cause of the leak is based on 35 years of experience in this field and is grounded in principles that appear to be widely accepted in the scientific community. Rec. Doc. 120-1 at 73. As State Farm points out, the Rheem Technical Service Bulletin and Use and Care Manual for the subject water heater "describe the exact processes (i.e., electrolysis/corrosion) and situation (i.e., voids in the glass lining)" upon which Mr. Hero bases his theory, indicating that these principles are widely accepted and subject to publication. Rec. Doc. 119 at 9-10. Rheem's experts also refer to and explain how these processes occurs. Rec. Doc. 120-6 at 3-4; Rec. Doc. 120-7 at 3. Mr. Hero, equipped with the knowledge of these scientific processes, his own experience with water heater failure, and the facts of the situation at hand, came to the conclusion that a defect in the glass lining was the probable cause of the leak. Rec. Doc. 80-2 at 2. Mr. Hero's opinion differs from that of Rheem's experts, but it is nonetheless a deduction based on what he knew and observed, not simply a "speculative supposition." *See Hartsfield v. Bradford-White Water Heaters, Inc.*, 2004 WL 515612, at *5 (N.D. Tex. Feb. 23, 2004).

Contrary to Rheem's assertion that Mr. Hero "assumes a defect exists because a defect can occur as a general phenomenon," Mr. Hero's bases his testimony on the fact that the anode had been completely consumed and the tank had corroded and leaked *more rapidly* than he considered normal

6

given his extensive work in this area.  Rec. Doc. 120-1 at 137-138.  Based on his experience, he came to the conclusion that this likely indicated a defect in the glass lining.  Rec. Doc. 120-1 at 137-138.  Mr. Hero in no way testifies that because he is aware that a defect can occur in general that he assumes one occurred in the present case.  He takes the specific facts of the situation, his observations of the tank, and his experience with the causes of water heater failure to make a reasoned deduction that a defect existed in the glass lining.  Rec. Doc. 80-2 at 2.

As Rheem recognizes in its Motion, the fact that Mr. Hero does not eliminate all other possible causes of the leak (such as those that Rheem's experts put forth) in offering his opinion is not dispositive.  *See Chisesi Bros. Meat Packing Co., Inc. v. Westchester Surplus Lines Ins. Co.*, 2010 WL 3720465, at *4 (E.D. La. Sep. 9, 2010); Rec. Doc. 81-1 at 5.  A failure to eliminate other possible causes may undercut the strength of an expert's opinion, but it does not affect the admissibility of his opinion.  *Chisesi Bros.*, 2010 WL 3720465, at *4.  The traditional methods for attacking "shaky" testimony, such as "[v]igorous cross-examination [and] presentation of contrary evidence," remain available to Rheem.  *Daubert,* 509 U.S. at 596; *United States v. 14.38 Acres of Land*, 80 F.3d at 1078.  Rheem's Motion in Limine to exclude Mr. Hero's testimony is DENIED.

### III. MOTION FOR SUMMARY JUDGMENT

**A. Legal Standard for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  An issue is material if its resolution could affect the outcome of the action, and a genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*

7

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2502, 2510, 91 L.Ed.2d 202 (1986); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 408-09 (5th Cir. 2002).  When considering whether there is a genuine issue of material fact, the court must view evidence and inferences drawn from that evidence in the light most favorable to the non-moving party. *United States ex rel. Reagan v. E. Tex. Med. Ctr. Reg'l Healthcare Sys.*, 384 F.3d 168, 173 (5th Cir. 2004) (*citing Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001).  The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  If the movant meets this initial burden, the burden shifts to the non-moving party, who must point to specific facts or show evidence that there is a genuine issue of material fact.  *Id.*

**B. Analysis of Rheem's Motion for Summary Judgment**

There are four ways a product may be deemed "unreasonably dangerous" under the Louisiana Products Liability Act ("LPLA").  A product may be unreasonably dangerous: (1) in construction or composition; (2) in design; (3) because an adequate warning about the product has not been provided; and (4) because it does not conform to an express warranty of the manufacturer about the product.  LA. REV. STAT. § 9:2800.54 (2012).  A manufacturer shall be liable to a claimant for damage proximately caused by a characteristic which renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product.  *Id.*

The complainants allege that the Rheem water heater was unreasonably dangerous in its construction, composition, and/or design, that Rheem failed to warn of its defects, and/or that the heater did conform to Rheem's express warranty.  Rec. Doc. 1 at 3.

   1. ***Defect in Construction or Composition***

A product is unreasonably dangerous in construction or composition if, at the time it left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer. LA. REV. STAT. § 9:2800.55 (2012). This provision of the LPLA provides a remedy for damages caused by a product that is defective due to a mistake in the manufacturing process. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 262-63 (5th Cir. 2002). Summary judgment is proper only where there is no evidence raising a genuine issue of material fact as to whether the product was unreasonably dangerous. *Id.* at 263.

Rheem argues that there is no genuine dispute of material fact as to whether the water heater was defective in construction or composition because there is no competent evidence supporting the construction defect theory. Rec. Doc. 80-1 at 9; Rec. Doc. 130 at 3. State Farm contends that there *is* a genuine issue of material fact as to whether the water heater was defective in construction or composition. Rec. Doc. 120 at 7. It discusses the life expectancy of the water heater, the type of failure, and whether the complainants caused or contributed to the water heater's failure.

Mr. Hero states that he believes the average life expectancy of a water heater to be 20 years or more. Rec. Doc. 120-1 at 73. Rheem's experts state that the subject water heater's life expectancy was six years as specified in the warranty. Rec. Doc. 120-6 at 1; Rec Doc. 120-7 at 5. However, Rheem's certificate of limited warranty does not state that the warranty period is equal to the product's life expectancy, and Rheem's experts do not discuss the average life expectancy of a water heater. Rec. Doc. 120-1 at 169-170. There therefore remains an issue of material fact as to the life expectancy of the subject water heater. For the present purposes, the Court finds that the issue of life expectancy is relevant to the alleged existence of a defect as a matter of logic.

Mr. Hero and Rheem's experts additionally disagree on the type of failure seen in this case. Mr. Hero contends that the leak at issue was catastrophic. Rec. Doc. 20-1 at 56. Rheem's experts argue that the leak began as a small leak that gradually progressed as a result of a normal failure of the tank. Rec. Doc. 120-7 at 6. The experts' disagreement on this issue shows that there is a genuine issue of material fact as to whether the leak was catastrophic (which Mr. Hero contends is indicative of a defect in the glass lining) or normal.

Mr. Hero and Rheem's experts also disagree over whether the cause of the leak and resulting damage was a construction defect or the complainants' failure to inspect the anode rod and properly locate the water heater inside their home. Rec. Doc. 120-1 at 137-138; Rec. Doc. 120-6 at 5; Rec. Doc. 120-7 at 5. All three experts provide bases for the opinions they offer and whether there was a defect in construction or composition remains a genuine issue of material fact. Summary judgment is not appropriate where there *is* evidence raising a genuine issue of material fact as to whether a product is unreasonably dangerous. *See Stahl*, 283 F.3d at 263. Rheem's Motion for Summary Judgment as to the defect in construction or composition claim should therefore be DENIED.

### 2. *Failure to Warn*

A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left the manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product. LA. REV. STAT. § 9:2800.57 (2012). An "adequate warning" is one that would lead an ordinary or reasonable user to contemplate the danger in using or handling the product and either decline to use

10

it or to use it in such a manner so as to avoid the damage for which the claim is made. LA. REV. STAT. § 9:2800.53(9) (2012).

Determining whether a warning is adequate involves balancing considerations such as the severity of the danger, the likelihood the warning will catch the attention of those who will foreseeably use the product and convey the nature of the danger to them, the intensity and form of the warning, and the cost of improving the strength or mode of the warning. *Black v. Gorman-Rupp*, 94-1494, p. 4 (La. App. 4 Cir. 5/16/95); 655 So.2d 717, 721 (citing *Bloxom v. Bloxom*, 512 So.2d 839, 844 (La. 1987).

State Farm argues that the instructions in Rheem's Use & Care Manual do not adequately warn consumers of the danger associated with the failure to remove and inspect the anode rod. Rec. Doc. 120 at 14. Additionally, it argues that Rheem failed to place an adequate warning regarding the dangers associated with such failure on the product itself. Rec. Doc. 120 at 15. This Court finds State Farm's contentions persuasive. Rheem's Use & Care Manual advises the user to periodically inspect the anode rod, but it does not provide information that would lead an ordinary person to understand the danger of extremely destructive leaking that is associated with failure to inspect the anode rod. LA. REV. STAT. § 9:2800.53(9); Rec. Doc. 120 at 15-16; Rec. Doc. 120-1 at 178. It is undisputed that the warning on the water heater itself neither informs the user of the need to check the anode rod frequently or of the danger that could result from a failure to do so. Rec. Doc. 120 at 15-16; Rec. Doc. 120-1 at 171.

However, as Rheem states in its reply memorandum, the complainants must have actually looked at the warnings on the water heater to prevail on an inadequate warning claim. *See Bloxom*, 512 So.2d at 850-51; Rec. Doc. 130 at 4. An essential element of a plaintiff's cause of action for

11

failure to adequately warn of a product's danger is that there must be "some reasonable connection between the omission of the manufacturer and the damage which the plaintiff has suffered." *Bloxom*, 512 So.2d at 850; *Gray v. Cannon*, 01-757, p. 6 (La. App. 5 Cir. 1/15/02); 807 So.2d 924, 929. When a manufacturer fails to give adequate warnings or instructions there is a presumption that a user would have read and heeded such admonitions, but this presumption can be rebutted if the manufacturer provides evidence that an adequate warning would have been futile under the circumstances. *Bloxom*, 512 So.2d at 850; *In re Gramercy Plant Explosion at Kaiser*, 04-1151 to 04-1191, p. 15 (La. App. 5 Cir. 3/28/06); 927 So.2d 492, 501. In this case, both Michael Moguel and Delmy Cruz admit they never read Rheem's Use & Care Manual and never read the warnings located on the tank itself, indicating that an adequate warning would have been futile in these circumstances. Rec. Doc. 80-4 at 9-10; Rec. Doc. 130-1 at 4, 7. Therefore the Motion for Summary Judgment as to the failure to warn claim should be GRANTED.

### *3. Remaining Claims*

The parties agree that the leak occurred after the six-year express warranty made by Rheem had expired. Rec. Doc. 80-1 at 8; Rec. Doc. 80-3 at 4-5. The plaintiffs cannot maintain a claim for breach of an express warranty where no such warranty is in effect. The Motion for Summary Judgement as to the breach of express warranty claim should be GRANTED.

Next is the claim of design defect. Rec. Doc. 1 at 3. The only testimony regarding this claim is Mr. Hero's testimony that the design of the water heater in question was "good" if properly executed. Rec. Doc. 120-1 at 75. State Farm does not discuss this claim or argue that there are any genuine issues of material fact as to whether the water heater was defective in design in its opposition memorandum. This is construed by the Court as the plaintiffs' agreement that there are

no genuine issues of material fact in regard to this claim. State Farm's failure to brief or argue the claim of design defect in its opposition memorandum is grounds for finding that the issue has been abandoned. *See Fehlhaber v. Fehlhaber*, 681 F.2d 1015, 1030 (5th Cir. 1982). The Motion for Summary Judgment as to the claim of defect in design is therefore GRANTED.

It is unclear to this Court whether the complainants also intend to make a separate claim of negligence against Rheem. Rec. Doc. 1 at 4. As Rheem recognizes in its Motion for Summary Judgment, the LPLA establishes the exclusive theories of liability for manufacturers for damage caused by their products. LA. REV. STAT. § 9:2800.52; *Brown v. R.J. Reynolds Tobacco Co.*, 52 F.3d 524, 526 (5th Cir. 1995); *Ashley v. Gen. Motors Corp.*, 27,851, p. 3 (La. App. 2 Cir. 1/24/96); 666 So.2d 1320, 1321; Rec. Doc. 80-1 at 6. A claim of negligence is not viable as an independent theory of recovery against a manufacturer. *Jefferson v. Lead Indus.*, 106 F.3d 1245, 1251 (5th Cir. 1997). Therefore the Motion for Summary Judgment as to any negligence claim should be GRANTED.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that the Motion in Limine filed by Rheem Manufacturing Company is DENIED. Rec. Doc. 81.

IT IS FURTHER ORDERED that Rheem's Motion for Summary Judgment is GRANTED as to the failure to warn, design defect, express warranty, and any negligence claims and DENIED as to the construction or composition defect claim. Rec. Doc. 80.

New Orleans, Louisiana, this 31st day of July, 2013.

**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**